## CONGER *v.* WEAVER.

Only nominal damages are recoverable for the failure by a vendor to perform an executory contract for the conveyance of land made in good faith and broken without fraud by reason of his inability to make a good title.

ACTION on an executory contract for the sale of a farm in Groton, in the county of Tompkins, by the vendee against the vendor.   The contract was dated October 2, 1855.   The farm was described as the one owned and occupied by the defendant, containing seventy-three acres, one rood and thirty-nine rods. The plaintiff was to pay $3,800; $1,000 thereof on the 1st day of March then next, and the remainder in seven equal annual installments.   There were also included in the sale four cows, one yearling, two calves and six sheep, the hay then in the barn and the grain then sown on the land.   The plaintiff was to have the possession of the personal property and certain rooms in the house and a part of the barn immediately, and to have full possession on the 1st of March.   On that day the

defendant, on receiving the $1,000, was to execute and deliver to the plaintiff, "at his own proper cost and expense, a good and sufficient warranty deed for conveying and assuring to him, the plaintiff, the fee simple of said premises, free and clear from all incumbrances." The answer having put the material facts alleged in the complaint in issue, the case was tried before a referee. On the trial, the execution of the contract being admitted, the following facts appeared and were found by the referee: The plaintiff, on the 18th of October, 1855, took possession of the personal property and of the rooms in the house, removing for that purpose, from his former residence in Broome county, to the premises. On the 1st of March following, he tendered to the defendant $1,000, and demanded a deed according to the contract, upon which the defendant tendered to the plaintiff a warranty deed executed by the defendant and his wife, which the plaintiff refused to accept, alleging that it did not convey a good title free from incumbrances. The plaintiff, two days afterwards, moved off, returning the personal property to the defendant. In fact, the defendant had a good title to all but five and one-fourth acres of the farm. There were two mortgages upon it given by former owners which were unsatisfied of record, but they had been paid and the creditors had just before executed certificates of satisfaction which had not then been entered of record, but that was done shortly afterwards. As to the five and one-fourth acres, the referee found that it was formerly owned by one Backus, who conveyed it on the 27th of February, 1850. The evidence was conflicting whether this conveyance was made to the defendant, or to his father, D. R. Weaver. The deed had been destroyed by the accidental burning of the defendant's dwelling-house in 1853. D. R. Weaver swore that although he bought the land of Backus, the latter, at his request, executed the deed to his son the defendant; but Backus swore that his recollection was that the deed was to the father. The referee stated that after a careful comparison of the testimony, he found that the deed was not executed to the defendant. As matter of law he held that the deed offered

did not convey a good title, and that the plaintiff was entitled to recover; and he reported for the plaintiff for $60 damages on non-performance of the agreement, but did not state in particular for what the damages were given. Evidence had been given on the trial of an increase in the value of the cattle from October to March, and of the expense of the plaintiff in moving on to the premises; but there was none as to the value of the farm.

On an appeal by the defendant the judgment was reversed at general term and a new trial ordered; the plaintiff appealed to this court, giving the stipulation required by the statute. The case was submitted on printed briefs.

*R. H. Duell*, for the appellant.

*Myron Ellis*, for the respondent.

DENIO, J. The new trial was awarded on the ground that the plaintiff having paid nothing on account of the purchase, and the defendant having acted in good faith, the former, conceding that there was a breach of the contract, was only entitled to nominal damages. In actions upon contract where the facts are undisputed, the *animus* of the defendant is not usually a material element in determining whether he is liable, or in fixing the amount of the recovery. If the question were *res nova*, I should say that a vendor who had failed to perform his contract would lie under an equal obligation to indemnify the vendee, whether his intentions had been fair or perverse. The pecuniary injury to the vendee would be the same in either case; and the law does not in this class of actions profess to award damages by way of punishment or for the sake of example. This inclination of my mind as to the theory of the defence, has led me to look into the cases with considerable attention. *Nurse* v. *Barns* (1 *T. Raym.*, 77), is a mere note of a case in which the defendant, in consideration of £10, had agreed to let the plaintiff enjoy certain iron mills for six months, and it appeared that they were worth but £20 per annum; and yet

damages had been given to £500 by reason of the loss of stock laid in. The court held that the jury might well find special damages in addition to the £10, and the verdict was sustained. The special circumstances are not stated. *Flureau* v. *Thornhill* (2 *Wm. Black.*, 1078), was the case of a sale at auction of a rent issuing out of leasehold premises, for a term of years. The plaintiff had paid down a deposit of 20 per cent. The case states that the defendant upon looking into the title "could not make it out," and thereupon offered the plaintiff to convey such title as he had, or to pay back the deposit with interest and costs. The jury allowed £20 for damages in addition to the deposit, contrary to the instructions of the judge; and a new trial was granted. The Chief Justice of the Common Pleas, DE GREY, said that upon a contract for a purchase, if the title proved bad, and the vendee was (without fault) incapable of making a good one, he did not think the purchaser could be entitled to any damages for the fancied goodness of the bargain he supposes he has lost. GOULD, J., and BLACKSTONE, J., expressed themselves of the same opinion, and the remaining judge, NARES, after some hesitation, concurred. In another case where the sale was by an auctioneer, and the sheriff's jury, after a default, had given the plaintiff a large sum for the loss of the bargain, the court set aside the verdict upon the defendants repaying the deposit with interest and costs, including the costs of investigating the title. (*Bratt* v. *Ellis*, *C. B.*, 45 *Geo.* III, *reported in the Appendix to Sugden on Vendors*, *No.* 7.) In the next case in the same book (*Jones* v. *Dyke*), where the contract was made by the defendants as auctioneers, and the owner of the land denied their authority to sell, and it was shown that they had not authority (though it is to be inferred that they supposed they were authorized), the court refused to allow anything for the loss of the bargain, though the difference between the value of the land and the amount agreed to be paid was very large; but they charged the defendants with the plaintiff's traveling expenses of several journeys, and interest on the amount agreed to be paid, though nothing had been advanced. In *Hopkins* v. *Grazebrook* (6 *Barn. &*

*Cress.*, 31·), the defendant had put up· at auction certain pre-
mises which he had contracted to purchase of another person,
that other having only a contract of purchase from the owner.
The plaintiff purchased at the auction and paid the deposit; but
difficulties having arisen between the owner and the party con-
tracting with him, no conveyance was executed and the defen-
dant could not therefore give a title to the plaintiff. The judge
instructed the jury that they were not obliged to confine their
verdict to nominal damages, and they gave £70 damages.
When the case came before the Court of King's Bench, ABBOT,
Ch. J., said that upon the present occasion he would only say
that if it was advanced as a general proposition that where a
vendor cannot make a good title the purchaser should recover
nothing more than nominal damages, he was by no means pie-
pared to assent to it. He added that if it were necessary to
decide that point he should desire to have time for considera·
tion. He proceeded to distinguish the case from *Flureau* v.
*Thornhill*, by showing that in that case the defendant was the
owner of the estate, and though the title was objectionable,
he offered to convey what title he had; while in the case before
the court the defendant had improperly put up the estate at
auction before he had got a conveyance, and that he did not
and could not make such an offer as in the case relied on. The
verdict was allowed to stand.

Several cases upon this question have been decided in the
courts of this State. *Baldwin* v. *Munn* (2 *Wend.*, 399), was an
action on an executory contract by vendee against vendor,
where the defendant had refused to convey for the reason that
after making the contract, he had ascertained that his grantor
had conveyed to another before he deeded the land to him.
Entire good faith was shown on the part of the defendant. The
court, Judge SUTHERLAND giving the opinion, held that the
plaintiff was only entitled to nominal damages. The ground
mainly relied on is the analogy between this class of actions
and those upon covenants of title, in which it is well settled
that the purchase money and interest only can be recovered,
however valuable the purchase may have been. The authoritv

of the case is perhaps somewhat weakened by the circumstance that there was another point in it upon which the court were likewise of opinion that the plaintiff could not recover. *Peters* v. *McKeon* (4 *Denio*, 546), was a case in its essential circumstances very similar to the one now before us. The defendant contracted to sell to the plaintiff his farm on Staten Island, and the conveyance was to be executed and a large part of the purchase money paid on the 1st day of May succeeding the time of making the contract; the plaintiff in the meantime being at liberty to go into possession. The plaintiff attended at the place appointed in the contract, prepared to pay the money, and the defendant did not appear; but there was some evidence tending to show that his failure was owing to a mistake. But the defendant could not make a perfect title, a small undivided interest—one twenty-fourth part—being owned by an infant, and as to this the defendant offered a covenant by a third person, that the infant should convey on coming of age. Shortly after the 1st of May, the defendant offered to give such title as he had, and tendered a deed which the plaintiff refused to receive, and removed from the farm. The plaintiff had in April removed from Columbia county on to the premises purchased, and had manured, plowed and planted portions of the land. The action was brought in the Superior Court of New York on the contract, the plaintiff claiming to recover only for his expenses in removing and for what he had laid out upon the land. The judge charged that if the defendant's omission to appear on the day named was inadvertent and unintentional, and he had, before the plaintiff had moved off, tendered a conveyance of such title as he had, the plaintiff would not be entitled to recover the special damages claimed. The verdict was for six cents damages. The judgment was affirmed by the Supreme Court, the opinion being given by Chief Justice BRONSON. He referred to the cases upon covenants of title, as· Judge SUTHERLAND had done in *Baldwin* v. *Munn*, and stated his opinion to be that on an executory contract for the sale of lands which the vendor believed to be his own, and where there was no fraud on his part, if the sale falls through in consequence of

a defect of title, the measure of damages is the same as it is in the case of an executed sale; that he could not recover anything for the loss of a good bargain, or for the expenses of removing on to or improving the land; that there was no reason in favor of an allowance for such expenses which would not equally apply if the title had failed after a conveyance had been given. He distinguished the case from those in *T. Raymond*, 6 *Barnwell & Creswell*, and 17 *Wendell*, by showing that in the first and last the refusal to convey was perverse and without excuse, and that in the other the defendant, at the time when he made the contract, had no color of title. If the distinction thus taken is sound, the case of *Trull* v. *Granger* ( 4 *Seld.*, 115), decided in this court, is not in conflict with the decision in *Peters* v. *McKeon*. It was an action upon an implied covenant in a lease for a term to commence at a future day, to the effect that the plaintiff should be let into possession at the commencement of the term. The defendant, without any apparent reason—unless to get a better rent—had leased the premises to other persons. The plaintiff recovered the difference between the rent agreed to be paid, and what the proof showed to be the yearly value of the premises for the term, and the judgment was affirmed. It was a clear case of a breach of contract from perverse and selfish motives.

The judgment in *Brinckerhoff* v. *Phelps* (24 *Barb.*, 100) was, as I understand it, placed upon the distinction established in 2 *Wendell* and 4 *Denio*, of a contract made with a knowledge on the part of the vendor that he had no title, or of a dishonest refusal to convey because a better price could be obtained from another purchaser. The learned judge who delivered the opinion does, it is true, express some dissatisfaction with the doctrine laid down in those cases, as well as with that establishing the rule of damages in actions upon covenants of title, but without intending, as I think, to overrule them.

In the present case no want of good faith on the part of the defendant is found by the referee, or disclosed by the evidence. He was apparently desirous of completing the sale, and there is no reason to doubt but that he believed himself to have a good

title when he made the contract. The premises were incumbered at that time it is true, but he had it in his power to extinguish the incumbrances, as he did before the conveyance was tendered. The case is precisely within the decision of *Peters* v. *McKeon*, and whatever doubts I might have had upon the doctrine there established, as an original question, I think it safer to adhere to that precedent than to change the rule.

The damages were given for the expenses of removing from Broome county, as well as because the plaintiff had to give up, as he claims, the personal property. If there was a right to recover for the latter item, but not for the former, the order for a new trial was right. But I think there was no color for a verdict respecting the personal property. It was delivered by the defendant to the plaintiff pursuant to the provisions of the contract, and the latter might safely have kept it when the defendant failed to perform the other part of the agreement. He surrendered it voluntarily, and cannot now complain of the defendant for that cause.

I am in favor of affirming the judgment of the Supreme Court, and of giving final judgment in the case pursuant to the stipulation.

SELDEN, J., was absent; COMSTOCK, J., was for affirmance, because the plaintiff did not apprise the defendant of his real objection to the title, which he might have obviated by procuring a conveyance from his father. He expressed no opinion upon the principal question above discussed. All the other judges concurred with DENIO, J.

Judgment absolute against the appellant.